[Cite as *Ritchie v. Radcliff*, 2017-Ohio-312.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RONALD RITCHIE | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 26904 |
| | : | |
| v. | : | T.C. NO. 15-CVI-118 |
| | : | |
| TRACY RADCLIFF | : | (Civil appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___27th___ day of _____January_____, 2017.

. . . . . . . . . . .

BRIAN A. MUENCHENBACH, Atty. Reg. No. 0088722, 309 N. Barron Street, Eaton, Ohio 45320
     Attorney for Plaintiff-Appellant

TRACY RADCLIFF, 14038 New Lebanon Pike, New Lebanon, Ohio 45345
     Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Ronald Ritchie, filed November 9, 2015. Ritchie's Notice of Appeal provides that he appeals from the October 7, 2015 decision of the trial court on his "Small Claim Complaint" against Tracy Radcliff, his former tenant, in the Municipal Court of Montgomery County, Western Division. We note that Radcliff did not file a brief in response. Since the municipal court

did not allow Ritchie to fully present his evidence in his case-in-chief, it erred in dismissing his complaint on the merits. The judgment of the municipal court is reversed and vacated, and the matter is remanded for further proceedings consistent with this opinion.

{¶ 2} Ritchie filed his complaint on February 9, 2015. The attached statement provides:

Because I will do a complete inspection after March 15th 2015 I would ask the court to allow me to show evidence of vandalism on the court date. I need time to show appraisals and proposals of the damage done by the tennants [sic].

The tennant [sic] of 330 Capri has caused major damage to house [and] property. They have broken several contractual agreements. I'm asking for full amount along with attorney fees, court costs, unpaid rent, utility bills, along with repair costs of residence.

{¶ 3} Finally, the attached statement provides: "**AMOUNT CLAIMED** $3,000, **with interest at 3%, from the 15th day of March, 2015.**"

{¶ 4} The matter was set for trial on March 16, 2015 (Case Number 2015-CVI-118). On that date, the following exchange occurred:

THE COURT: Mr. Ritchie, who is the young lady with you?

MR. RITCHIE: This is my wife, and she is one of the witnesses over this matter.

I also have some witnesses sitting outside. I understand that witnesses are to stay outside until called upon.

THE COURT: Okay.

Just a minute. Let me review this.

(Pause)

THE COURT: Okay, it appears that in your Complaint you are asking for time to show appraisals and proposals of the damage done by the tenants.

So, I'm going to con - -

* * *

THE COURT: - - continue this and set it down for a hearing when there is more time for this to be presented.

* * *

MR. RITCHIE: Okay.

Now she had filed a claim against me on April 30th. Can we move that one back, also?

THE COURT: She has - - you have a cross-claim?

MS. RADCLIFF: Yes, on the - -

THE COURT: Okay, that's not - -

* * *

THE COURT: - - showing up on here.

Okay, we'll need both of those because it should be in one case. And yes, we'll put them together.

In fact, we could do it just on April 30th we could do it.

Is that - -

MS. RADCLIFF: I believe the date is April the 13th.

THE COURT:  - - acceptable to you?

What?

MS. RADCLIFF:  I believe it's April the 13th.

THE COURT:  Oh, April the 13th?

Okay, will that be enough time or do you need a new date?

MR. RITCHIE:  I'm ready the 13th.

THE COURT:  Okay.

All right, we'll see them at the window.  We'll find out about - - if there's a cross-claim.  If it's set for the 13th we can put them both together on that date.

MR. RITCHIE:  Okay.

THE COURT:  Okay, thank you.

MS. RADCLIFF:  Thank you.

* * *

{¶ 5} On April 14, 2015, the court issued notice that the matter was set for trial on June 8, 2015.  On April 24, 2015, correspondence to the trial court, dated April 23, 2015, from Melissa Voiles, Senior Field Claims Representative at the Celina Insurance Group was filed.  It provides:  "Celina Insurance Group has made payment to our policyholder for damages resulting from vandalism damages."  It further provides:  "Please protect our subrogation interests if any money is awarded to Mr. Ritchie for vandalism damages." The attached estimate provides: "Type of Loss: Vandalism," and reflects a total amount of $1,861.00.

{¶ 6} On May 18, 2015, Ritchie filed a "Motion to Transfer," which provides:

I, Ron Ritchie, would like case number 2015 cvi 00118 to be transferred from small claims court, to the regular docket of the municipal court, pursuant to Ohio Revised Code 1925.10(A).

After investigating, new evidence has surfaced. The new evidence is showing damage claims would far exceed the amount given in a small claims complaint and are estimated to be $15,000.

{¶ 7} Radcliff opposed the motion on May 22, 2015, asserting that it "does not meet the statutory requirements of Section 1925.10(B) of the Ohio Revised Code." On the same date, the "Affidavit of Sue Seeberger in Support of Defendant's Memorandum in Opposition to Plaintiff's Motion to Transfer" was filed which provides that Seeberger is counsel for Radcliff. The affidavit provides:

On May 18, 2015, I received an email from Tasha West, legal assistant at Green & Green, with 23 pages of attachments, of which 4 pages are service invoices from January and February 2015 from heating contractors totaling $528.47 and 2 pages are work orders from August and September 2014 for carpet cleaning services totaling $152.40, for a total of $680.87. See Exhibit A attached hereto. One of the remaining 17 pages is a duplicate service invoice from one heating contractor and the remaining 16 pages are copies of photographs and text messages.

{¶ 8} The court did not rule upon the motion to transfer. On June 8, 2015, at the start of trial, the bailiff called the cases as: "Tracy Radcliff v. Ronald Ritchie, 2015-CVI-208 and Ronald Ritchie v. Tracy Radcliff, Case No. 2015-CVI-118." Sue Seebeerger entered her appearance in both matters on behalf of Radcliff, and Sean Culley stated,

"I'm appearing as defense counsel for Mr. Ritchie in Case 2008 [sic]," having "been appointed by defense counsel for defen - - insurance counsel." Culley indicated that he was not representing Ritchie in 2015-CVI-118. The following exchange occurred:

THE COURT: * * * Okay, Ms. Seeberger, if you would proceed.

MS. SEEBERGER: Oh, would we be proceeding - -

THE COURT: Yes.

MS. SEEBERGER: - - in the order the case - - cases are filed?

THE COURT: Yes. Yes.

MS. SEEBERGER: Well - -

THE COURT: Well, in order - - no.

208 - - we're doing 208 first.

Is that - -

MS. SEEBERGER: Her claim is derivative and based on his against her.

THE COURT: Okay, do you want to do 118 first?

MS. SEEBERGER: Well, I would request that, yes.

THE COURT: Okay.

Mr. Ritchie, you are representing yourself on the case styled 2015-CVI-118?

MR. RITCHIE: * * * Correct.

THE COURT: Okay.

All right, then we will proceed with that case first. It - - now originally, I had thought that this was a cross-claim, but it is not a cross-claim?

It is a separate action?

MR. RITCHIE: Correct.

THE COURT: All right.

Okay, Mr. Ritchie, if you would come forward and state your claim.

Briefly, please.

**{¶ 9}** Ritchie stated that he is "the landlord at the residence that is involved at 330 Capri Place in New Lebanon, Ohio." Ritchie indicated that his wife was outside, and that she is one of his witnesses. Ritchie stated that his "claim is about vandalism in the home, neglect and damage to the residence. * * * The evidence will be overwhelming." Ritchie stated that he is "asking the court to award me the fullest amount possible given in small claims court, reimbursement for administrative fees for the court, reimbursement for receipts, reimbursement for repair bills, utility bills, unpaid rent, along with reimbursement for damage done to the home."

**{¶ 10}** Ritchie presented a copy of the August 15, 2014 rental agreement between the parties, which reflects monthly rent of $725.00 per month, and provides for a "month-to-month tenancy." The bailiff marked it as Exhibit 1. Ritchie cited numerous enumerated paragraphs in the agreement that he alleged were violated by Radcliff. When Ritchie asked the court if he should "go over each one of the numbers," the court responded, "Ver - - very, very briefly and let's get to the point. And it sounds like we're going to be going over it again in the second case." Ritchie stated that Radcliff's rent was paid through February 15, 2015, "but she stayed afterward." Ritchie stated that "Number 12 says that she is to return the keys to me. I've never gotten any keys from her." Ritchie asserted that "Number 20 is about the furnace filter. Any damages done to the furnace are to be

paid by the tenant when the filter has not been changed or the filter is bad in any way, shape or form."

{¶ 11} Ritchie presented one page of copies of text messages he asserted were between him and Radcliff regarding the furnace not working, and his response, and the bailiff marked the document as Exhibit 2. He stated, "I have pictures of damages to the home. I brought the filter with me. I brought heaters with me for today because those will come into question in the court." Two sets of copies of black and white photographs were marked as Exhibits 3 and 4. Ritchie indicated, "I have documented evidence from Southwestern Heating and Air and Southtown Heating and Air, two different heating and air companies." Copies of four invoices were marked as Exhibit 5. Ritchie stated, "I also have documentation from * * * professionally done carpet cleaners," and two "Work Order Contracts" from Area Cleaning Services were marked as Exhibit 6.

{¶ 12} Ritchie indicated, "I also have witnesses that will make statements today. I have other documentation from Southwestern Heating and Air, a letter done by one of the repairmen for this case speaking about the furnace and how it's running and other issues." Ritchie indicated, "I have documentation from Doug Crowell who is a plumber who inspected the - - the water situation there at the same residence." The bailiff then indicated that "number seven will be a letter from Southwestern Ohio Heating and Air." The court then advised Ritchie, "The reason I'm doing this is we're going to go through this. You're testifying now and we're going to put you on the stand and she's going to cross-examine you." The bailiff then indicated, "And number eight, Your Honor, will be another letter from a Crowell * * * Plumbing." Ritchie indicated that he "provided Ms. Radcliff with two heaters. One was an infrared owned by Phil Dasher. The other was

a personal one of mine." Ritchie stated that the heaters were "outside in my vehicle." Finally, Ritchie indicated, "I also have a documented letter from the tenants that live there now * * * it's an affidavit where they say they have no problems with the residence whatsoever * * *." The bailiff marked the May 28, 2015 affidavit as Exhibit 9.

{¶ 13} The court asked Ritchie twice, "Is that it?" Ritchie responded, "Yes." The court then indicated to Ritchie to "take the stand and * * * we'll allow Ms. Seeberger to cross-examine." The following exchange occurred:

BY MS. SEEBERGER:

Q. Mr. Ritchie, are there any other damages that you are presenting to the Court today in * * * your case?

A. Possibly.

I'm not sure what you're getting at with that question.

Q. I am preparing to cross-examine you, and I need to cross-examine you after you have presented evidence on all of your damages. It would be more efficient and I would ask direction from the Court at this point.

THE COURT: Yeah.

Do you have any other testimony or evidence as to damages, other than the pictures and other things that you've already documented?

MR. RITCHIE: I - - I have pictures. I have about the water situation, about the furnace situation.

THE COURT: No - - no. Not more pictures. We already have the pictures.

MR. RITCHIE:   Right, there - - they're pictures.

THE COURT:   It's - - you - - if - - I think he's - - I think you're saying that you've already - - you've presented your case-in-chief, right?

MR. RITCHIE:   Right, but the - - I don't have pictures of - - of water damage in my - - I just have documentation.   I don't have pictures.

THE COURT:   Do you have enough to do what your - - you have to do?

MS. SEEBERGER: * * * I believe I do, Your Honor. * * *   But I - - there were also additional documents that I received that nothing's been said about.   And if they aren't going to be presented in testimony today, then I will object to their admission as evidence in his case-in-chief on damages on - -

THE COURT:   Okay, are there any - - were any of those exhibits presented just now?

MS. SEEBERGER:   No.

THE COURT:   All right, proceed.

{¶ 14} Counsel for Radcliff introduced exhibits regarding the payment of utilities from the City of New Lebanon and Vectren, and Ritchie indicated that he was no longer seeking damages for unpaid utilities.   The following exchange occurred:

Q.   Do you have a claim for anything else relating to water supply to the house?

A.   Yes.

Q.   You haven't submitted any evidence on that.

A. I have it from Boone's Restoration for cleanup of the home.

Q. I've - - I don't have anything.

A. Okay, I can get it to you if you want me to get it for you.

Q. Well, no.

You've put on your case-in-chief.

A. Well I never finished.

THE COURT: You had presented what exhibits you have, okay.

And - -

MR. RITCHIE: I could still add to the exhibits.

THE COURT: No, you cannot add to the exhibits, sir.

MR. RITCHIE: Okay, I still have exhibits.

THE COURT: Well, you didn't have them in court when we asked for them, okay.

Now let her proceed.

MR. RITCHIE: All right.

{¶ 15} Regarding Exhibit 6, Ritchie acknowledged Radcliff moved into the premises on August 15, 2014, and that the initial carpet cleaning occurred on August 20, 2014. Counsel for Radcliff asked, "it was done because she complained about the smell of the carpet and you had these cleaned at the beginning of her tenancy, correct?" Ritchie responded, "I had them professionally cleaned on 8/20/14." Ritchie testified that the second carpet cleaning occurred on September 4, 2014. He stated, "That could be damage. She's been there a month. She owns a dog."

{¶ 16} When asked for the amount of unpaid rent he was seeking, Ritchie

responded, "Well, my new tenants moved in, in May I believe it was. And I did not know of her moving out. She was paid up 'til February 15th. So I am stating two rental agreements at $725 apiece. So that would make $1,450.00." Ritchie identified a January 29, 2015 "Notice to Leave the Premises," which provides in part, "You will please notice that I want you on or before Feb. 1st 2015 to leave the premises you now occupy." Counsel for Radcliff presented two receipts, one dated January 8, 2015, in the amount of $400.00 and one dated January 16, 2015 for $325.00 from "MoneyGram." Ritchie stated that Radcliff's rent was due on the 15th of each month, and that he has not seen the receipts. Ritchie identified correspondence from him to Radcliff, dated February 8, 2015, which provides that he "will not be continuing our lease agreement for 330 capri pl." It provides: "Therefore I'm giving you until March 15th 2015 to find another residence."

{¶ 17} Ritchie testified that he received a text message, as reflected in Exhibit 2, from Radcliff on January 27, 2015, advising him that the furnace was not working. Counsel for Radcliff directed Ritchie's attention to an Invoice in Exhibit 5, dated January 29, 2015 and noted that it indicates that the furnace filter was "extremely dirty. Needs new ASAP. Furnace is 26 years old." Ritchie stated that he could not make out the "26" on the invoice, and he testified that he did not know how old the furnace is. Ritchie stated that the house eventually lost running water.

{¶ 18} Regarding the two sets of photographs, Ritchie testified that the photos in Exhibit 3 were taken between January 27 – 30, 2015, and that the photos in Exhibit 4 were taken on February 10, 2015. The following exchange occurred:

Q. * * *

And these are all the pictures that you have with you?

A.   No.

Q.   These are all the pictures that are entered into evidence, right now?

A.   They have been - - these have been entered in as of right now.

Q.   Okay, and all of these pictures were taken before she vacated the premises, correct?

A.   Correct.

* * *

MS. SEEBERGER:   Your Honor, at this point in time that's my * * * cross-examination on the exhibits that have been presented in Plaintiff's case-in-chief.

THE COURT: Okay.

* * *

THE COURT: * * *

Okay, thank you sir.   You may step down.

MR. RITCHIE:   Ma'am, do I have the right to cross-examine myself?

THE COURT:   No, you can't cross-examine yourself.

* * *

THE COURT: * * *

Plaintiff's Exhibits 1 through 9, okay.

You wanted those exhibits admitted into evidence?

MR. RITCHIE:   There's other exhibits that's marked more than nine here.

MS. SEEBERGER:   You know, but that's all they've used.

THE COURT:   That's all that we had, sir.

* * *

THE COURT:   And - - that's all that we have.

You - - you are moo [sic] - - asking that these exhibits be admitted,

correct?

MR. RITCHIE:   Yes, along with some others.

THE COURT:   No, I've said three times these exhibits.

* * *

{¶ 19}  Counsel for Radcliff objected to Exhibits 8 and 9, and she stated that she had a limited objection to the photographs in Exhibits 3 and 4 "because they do not show damages.   He's just testified that all of those photographs were taken while she was still residing there in late January and sometime in February before she vacated the premises."   The court indicated, "the Court will rule on the admission of evidence at a later point."   After the court indicated that "we will take a five-minute break and then we will get into the next case," counsel for Radcliff asked to "put my client on briefly to counter his allegations about the damages in the defense of his case."   The following exchange occurred:

THE COURT:   He's - - in this case in 118 he was the plaintiff.

MS. SEEBERGER:   Right, but I want to put her on the stand to counter his allegations of damages - - her defense of his case.

* * *

THE COURT:   Yeah.

Is that not going to come up in the next case where you are - -

MS. SEEBERGER:     Well, as long as I'm not prevented.

THE COURT:    No, you're not prevented.

{¶ 20} After a brief recess, the bailiff called Case Number 2015-CVI-208, and the following exchange occurred:

MR. RITCHIE:    Your Honor, I would like to make another objection. I have not rested my case.    I would still like to pursue my case.

THE COURT:    What do you have left in your case, sir?

MR. RITCHIE:    I have witnesses that are here to testify.    My wife and Mr. Phil Dasher.

THE COURT:    Testify as to what?

MR. RITCHIE:    To the damages.    To the police department coming out.    To fixing furnaces.    They have credible information to all sorts of stuff to this case.

THE COURT:    All right.

It'll be very limited.    We have to be - - we're supposed to be out of here by 12:30.    And of course it's already 12:15.

I can on - -I can't go any longer than 1:00.

You - - you want - - you can object if you want to.

MS. SEEBERGER:    I - - I do object.

THE COURT:    Okay, all right.

MS. SEEBERGER:    He's all - - already rested.    He's presented his exhibits.    We've been through this and I don't believe his wife has any

personal knowledge, and I don't know who the other person is.

THE COURT:   Someone who wrote a - - a letter.

MR. RITCHIE:   No, the other person is the guy that he - - he went with me - -

THE COURT:   He provided the heater?

MR. RITCHIE:   He went with me on a walk through when I took the pictures.   He went with me to help work on the furnace.   He loaned me the heater, the infrared heater that was used.   She mentioned that earlier in her questioning about I borrowed it from Phil Dasher so the tenants could use it.

THE COURT:   Right, but that is not the - - the - -   that is not particularly relevant to your damages.   But if he did observe you taking the pictures and all of that, I will allow him to testify to that as to the damages. Can we do without your wife's testimony?

MR. RITCHIE:   Well, my wife was there twice when the water pipe broke.   She knows of the damages and the costs of those issues.   She - -

THE COURT:   Sir?

Are you alleging that Ms. Ritchie broke the water pipe?

MR. RITCHIE:   That's Radcliff.   I'm Ritchie.

THE COURT:   I'm - - I'm sorry, Ms. - -

MR. RITCHIE:   Yes, someone in the Radcliff family I'm alleging that they vandalized, not the water pipe.   The water meter.   There's a difference.

MS. SEEBERGER: Your Honor, there's no evidence of - - he has not put in an - -

THE COURT: Right.

MS. SEEBERGER: - - any evidence of vandalism - -

THE COURT: Right.

MS. SEEBERGER: - - of any type and - -

THE COURT: Right.

MS. SEEBERGER: - - the photographs that he has testified the photographs were taken late January and early February. She was still in residence properly. Her rent was paid through February 15th. He testified to that.

THE COURT: Yes, he did.

Okay.

MS. SEEBERGER: So the photographs don't go to damages.

THE COURT: Okay.

MR. RITCHIE: I did - -  I did turn in a - - a document from Crowell Plumbing where he states that it could not have froze.

MS. SEEBERGER: And I objected because that is hearsay.

MR. RITCHIE: He investigated the matter for me. He is - - he's a paid professional repairman.

THE COURT: Okay.

I'm going to rule that the Plaintiff's case-in-chief, and remember this is small claims, is finished. We've already gone over the exhibits.

Let's proceed with the - - this part of the case.

MR. RITCHIE:   I don't get a chance to call Phil?

THE COURT:   You - - we're going to proceed with Case No. 208.

MS. SEEBERGER: 208.

THE COURT:   Yes, Case No. 208.

MR. RITCHIE:   She said that I could call him, but - -

THE BAILIFF:   Go up there.   Remain standing behind the chair until (indiscernible).

MR. CULLEY:   There's nothing you can do about it today.

MR. RITCHIE:   Okay.

**{¶ 21}**  In Case Number 2015-CVI-208, Radcliff, Officer Steve Gingrey, and Tyler Petry, Radcliff's son, testified on June 8, 2015.   At the conclusion of Petry's testimony, counsel for Radcliff indicated that she had two additional witnesses, and counsel for Ritchie indicated that he intended to call three witnesses.   The court then indicated, "We're going to stop at this point on Case No. two - -2015-CVI-208.   And we will have to get another date to conclude that."   The record of the subsequent proceedings is not part of the record before us, nor is the court's ruling on the admission of the exhibits in Ritchie's case.

**{¶ 22}** On October 7, 2015, the court, in Case Number 2015-CVI-118, issued a "Decision and Judgment" that provides:   "This case came on for Small Claims Trial on June 8, 2015.   Plaintiff appeared *pro se* (without an attorney) and Defendant by Attorney Sue Seeberger.   Based upon the evidence presented court finds the claim [sic] are not well taken.   Case dismissed at Plaintiff's cost."

**{¶ 23}** We note that in his brief, Ritchie asserts the following "Statement of the Case": "This appeal was timely filed on December 11, 2015 and was taken from the trial court's entry of judgment and decision on November 17, 2015. * * *."

**{¶ 24}** Ritchie asserts three assignments of error herein, which we will consider out of order for ease of analysis. Ritchie's second assignment of error is as follows:

THE TRIAL COURT ERRED IN CONSOLIDATING PLAINTIFF-APPELLANT'S CASE WITH DEFENDANT-APPELLEE'S CASE.

**{¶ 25}** Ritchie asserts that the "court never held a hearing prior to joining the matters and, because of said consolidation, chaos and confusion abounded in the courtroom." He directs our attention to *Clemente v. Gardner*, 5th Dist. Licking No. 2002CA00120, 2004-Ohio-2254, and he argues that "[a] trial court, within its discretion, may consolidate matters under Civ.R. 42(A). * * * Civ.R.42(A), however, limits a court's ability to consolidate matters to only those situations where there exist common questions of law or fact and said consolidation can **only** occur after a hearing has been held." We note that Ritchie misstates the rule by adding the word *only*.

**{¶ 26}** Civ.R. 42(A) governs consolidation and provides:

(1) *Generally*. If actions before the court involve a common question of law or fact, the court may:

(a) join for hearing or trial any or all matters at issue in the actions;

(b) consolidate the actions; or

(c) issue any other orders to avoid unnecessary cost or delay.

**{¶ 27}** On March 16, 2015, the trial court indicated that Radcliff's "cross-claim" "should be in one case" with Ritchie's claim. There is no order of consolidation, and we

conclude that the matters were not consolidated but were merely joined for trial pursuant to Civ.R. 42(A)(1)(a). Ritchie did not object to the matters being tried together. Accordingly, we conclude that Ritchie's second assignment of error lacks merit, and it is overruled.

**{¶ 28}** Ritchie's third assignment of error is as follows:

THE TRIAL COURT ERRED IN AWARDING DAMAGES TO DEFENDANT-APPELLEE AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 29}** Ritchie asserts that the "trial court erred when it awarded damages to Defendant-Appellee for attorney fees because Defendant-Appellee failed to meet its burden of production and its burden of persuasion." Since Case Numbers 2015-CVI-118 and 2015-CVI-208 were not consolidated by judgment entry, and since Ritchie's notice of appeal is addressed to Case Number 2015-CVI-118, his arguments regarding the outcome of Case Number 2015-CVI-208 are not properly before us. We note the order dismissing Ritchie's complaint bears the 2015-CVI-118 case number only.[1] Accordingly, Ritchie's third assignment of error is overruled.

**{¶ 30}** Finally, Ritchie's first assignment of error is as follows:

THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF-APPELLANT'S CASE.

**{¶ 31}** Ritchie asserts that "the trial court erred in dismissing his claim because he had not failed to prosecute the claim, had not failed to comply with a court order, or

---

[1] We note that there is no final judgment entry in Case No. 2015-CVI-208 since the trial court issued judgment while Ritchie's appeal therein was pending. His appeal was subsequently dismissed by this Court for lack of a final appealable order.

failed to comply with the rules of civil procedure." He asserts that his "case was dismissed with prejudice because the claims were 'not well taken.' Interestingly, though, this dismissal was filed by the court prior to the end of the proceedings. As such, it can only be viewed as an involuntary dismissal pursuant to Ohio Civ.R. 41(B)(1)." Ritchie asserts that he informed the court "that he had several documents and intended to call several witnesses. * * * The court, however, assumed he completed his case-in-chief when he had finished simply telling the court what evidence he had prepared." Ritchie asserts that he had "simply summarized his case at the beginning of the proceedings on June 8, 2015 and the court, it appears, pressured him into ending his case-in-chief early by repeating the daunting question 'Is that it?' " Ritchie argues that whether "the court dismissed Mr. Ritchie's claim because he failed to prosecute said claim or because it found there was no basis to his claim, the court would be erroneous." Ritchie argues that "the court did not provide any notice to Mr. Ritchie that his claim would be dismissed pursuant to Civ.R. 41(B)(1)."

{¶ 32} We initially note that the " 'small claims divisions of municipal and county courts are intended to provide a forum for persons with relatively small, uncomplicated claims to seek redress without the need for attorney representation.' *Klemas v. Flynn* (1993), 66 Ohio St.3d 249, 252, 611 N.E.2d 810." *Leitschuh v. Allen*, 2d Dist. Montgomery No. 16392, 1997 WL 566115, *2 (Sept. 12, 1997). Civ.R. 1(C) provides, "These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (4) in small claims matters under Chapter 1925 of the Revised Code." The Rules of Evidence do not apply in small claims proceedings. Evid. R. 101(C)(8).

{¶ 33} The record reflects that the trial court dismissed Ritchie's case following its

conclusion on June 8, 2015, and not prior thereto, as Ritchie asserts. However, the record also reflects that in the course of the trial, the court did not allow Ritchie to fully present his case. When Ritchie presented the parties' rental agreement, the court advised him to discuss it "very, very briefly," and stated, "it sounds like we're going to be going over it again in the second case." Ritchie indicated that he had witnesses present to testify, and that he "brought the [furnance] filter with me." Immediately after Ritchie presented documentary and photographic exhibits, the court directed him to take the stand for cross-examination by Seeberger. In the course thereof, Ritchie stated that he "never finished" his case-in-chief, and that he still had exhibits to present. At the start of Case Number 2015-CVI-208, Ritchie again argued that he had "not rested my case," and that he had "witnesses that are here to testify" regarding his alleged damages. After first indicating that it would allow "very limited" testimony, on Radcliff's objection, the court ruled that "the Plaintiff's case-in-chief * * * is finished."

{¶ 34} We conclude that the trial court erred in dismissing Ritchie's case on the merits after failing to allow him to fully present his evidence. Accordingly, Ritchie's first assigned error is sustained, the decision of the trial court is reversed and vacated, and the matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Brian A. Muenchenbach
Tracy Radcliff
Hon. Adele M. Riley